**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                            :
BLAKE MODLIN                     :        Jury Trial Demanded
                                            :
                                            :
                Plaintiff,          :
        v.                              :
                                            :        Civil Action No.   23-4043
PIAZZA MANAGEMENT COMPANY  :
d/b/a MERCEDES BENZ;          :
MERCEDES BENZ OF WEST CHESTER; :
MERCEDES BENZ USA, LLC;      :
PEG PARK (individually);         :
EDUARDO MILLAN (individually);  :
MICHAEL STRICKLAND (individually); :
MIGUEL FLORES (individually), and :
DANIEL PIAZZA (individually)      :
                                            :
                Defendants.        :
_____:

**CIVIL ACTION COMPLAINT – FIRST AMENDED COMPLAINT**

Plaintiff, Blake Modlin by and through their attorneys, Derek Smith Law Group, PLLC,

hereby files the following civil action complaint against Defendants, Piazza Management

Company, Mercedes Benz of West Chester, Mercedes Benz USA, LLC, Peg Park, Eduardo Millan,

Michael Strickland, Miguel Flores, and Daniel Piazza (collectively "Defendants") for violations

of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 20003-17 (amended

in 1972, 1978, by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"); and the

Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, et. seq. ("PHRC").

## I.  PARTIES

1.      Plaintiff, Blake Modlin is an adult individual and resides in the Commonwealth of Pennsylvania with an address for purposes of correspondence at 10814 Pagewood Drive, Dallas, Texas 75230.

2.      Defendant, Piazza Management Company, individually and d/b/a Mercedes Benz is a business organization which is licensed to and regularly transacts business in the Commonwealth of Pennsylvania with offices for the purposes of correspondence at 1100 1st Ave, King of Prussia, PA 19406.

3.      Defendant, Mercedes-Benz of Westchester, individually and d/b/a Mercedes Benz is a business organization which is licensed to and regularly transacts business in the Commonwealth of Pennsylvania with offices for the purposes of correspondence at 1260 Wilmington Pike, West Chester, PA 19382.

4.      Defendant, Mercedes-Benz USA, LLC is, and at all relevant times was, a company duly organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 1 Mercedes-Benz Drive, Sandy Springs, Georgia 30328.

5.      Defendant, Mercedes-Benz is, and at all relevant times was, a company duly organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 1 Mercedes-Benz Drive, Sandy Springs, Georgia 30328.

6.      Defendant, Peg Park is an adult female who aided and abetted the gender discrimination, sexual harassment and retaliation who resides in the commonwealth of Pennsylvania with an address for the purposes of correspondence at 1100 1st Ave, King of Prussia, PA 19406.

7.      Defendant, Eduardo Millan is an adult male who aided and abetted the gender discrimination, sexual harassment and retaliation who resides in the commonwealth of Pennsylvania with an address for the purposes of correspondence at 1260 Wilmington Pike, West Chester, PA 19382.

8.      Defendant, Michael Strickland is an adult male who aided and abetted the gender discrimination, sexual harassment and retaliation who resides in the commonwealth of Pennsylvania with an address for the purposes of correspondence at 1260 Wilmington Pike, West Chester, PA 19382.

9.      Defendant, Miguel Flores is an adult male who aided and abetted the gender discrimination, sexual harassment and retaliation who resides in the commonwealth of Pennsylvania with an address for the purposes of correspondence at 1260 Wilmington Pike, West Chester, PA 19382.

10.     Defendant, Daniel Piazza is an adult male who aided and abetted the gender discrimination, sexual harassment and retaliation who resides in the commonwealth of Pennsylvania with an address for the purposes of correspondence at 1260 Wilmington Pike, West Chester, PA 19382.

11.     At all times material, Defendants was Plaintiff's employer and employed at least 15 employees.

12.     At all times material, Plaintiff, Blake Modlin worked in the Commonwealth of Pennsylvania such that Defendants were required to consider Plaintiff, Blake Modlin's rights under the Pennsylvania Human Relations Act.

13.     At all times material, Defendants violated Plaintiff's rights under the Pennsylvania Human Relations Act, in addition to Title VII of the Civil Rights Act of 1964.

14.     At all times material, Defendants were Plaintiff's joint and sole employers.

15.    Plaintiff Blake Modlin was a joint employee of Defendant, Piazza Management Company D/B/A Mercedes Benz, Mercedes Benz Of West Chester, and Mercedes Benz USA, LLC.

16.    At all times material to this civil action, Plaintiff was required to work within strict guidelines, policies and procedures that were purportedly enforced by Mercedes Benz USA, LLC.

17.    Plaintiff was trained according to Mercedes Benz, USA, LLC corporate standards, which were regularly referred to and enforced by Defendants including the individually named Defendants in the caption of this civil action complaint.

18.    Plaintiff's day to day work was dictated based on Mercedes Benz, USA, LLC standards, which were outlined to Plaintiff immediately upon beginning her employment for Defendants and continuing until Plaintiff's unlawful termination.

19.    Plaintiff began her employment at Mercedes Benz of Westchester sometime around August 21, 2021.  At that time, Mercedes Benz of Westchester was owned by Sloan Auto Group.

20.    Mercedes Benz of Westchester was purchased by Defendant, Piazza Management Company sometime around December 2021.

21.    Pursuant to the purchase, new management arrived to oversee, control and monitor Plaintiff's day to day work, however, the policies, procedures and protocols that controlled Plaintiff's work did not change because they were the subject of corporate Mercedes Benz, USA, LLC.

22.    Plaintiff was frequently informed, reminded and disciplined based on Mercedes Benz, USA, LLC, corporate policies, procedures, and standards.

23.    Plaintiff was frequently informed that she had to conform to the standards of Mercedes Benz, USA, LLC corporate.

24.     Even according to Defendants' position, Plaintiff's employee handbook did not change in any manner after the change in ownership because Plaintiff's work assignments and standards were held to the Mercedes Benz, USA, LLC corporate standard.

25.     The way in which Plaintiff was required to answer the telephone was dictated by these standards.

26.     Mercedes Benz, USA, LLC operates with a mission statement to "inspire, create, an exceptional place to work and to do business.  One employee, one customer, one vehicle at a time period. Throughout transparent atmosphere premium auto inventory, and individualized customer care, we create the luxury shopping experience that our customers truly deserve."

27.     Plaintiff, Blake Modlin was required as part of her employment responsibilities to operate within the Mercedes Benz, USA, LLC corporate standards to achieve the Mercedes Benz, USA, LLC corporate mission.

28.     All aspects of Plaintiff's employment operated and centered around the Mercedes Benz, USA, LLC mission.

29.     Every vehicle sold, every part installed into a vehicle and the way in which Plaintiff was required to behave toward customers was all born from the exclusive control and mission of Mercedes Benz, USA, LLC.

30.     There was never a time when Plaintiff was responsible for selling any other products other than products that came from Mercedes Benz, USA, LLC.

31.     When Plaintiff had to work in the parts department, all of the parts came from Mercedes Benz, USA, LLC.

32.     Mercedes Benz held itself out as an approved "Mercedes Benz" dealer.

33.     Even the company name denoted ownership and control by Mercedes Benz, USA, LLC.

34.     Mercedes Benz, USA, LLC permits official and approved Mercedes Benz dealers to operate under the name "Mercedes Benz of…"  Accordingly, there are official, approved Mercedes Benz dealers that operate throughout the United States under the name "Mercedes Benz of…"  Defendants' dealer is "Mercedes Benz of Westchester."

35.     The employees who work at Mercedes Benz of Westchester have to be approved and certified by Mercedes Benz, USA, LLC.  This is advertised on the Mercedes Benz of Westchester website including the service section which states that "We proudly offer Genuine Mercedes-Benz Parts and Certified Mercedes-Benz Technicians."

36.     Plaintiff's supervisors informed their employees that they were required to attend training with Mercedes Benz, USA, LLC corporate.

37.     When Plaintiff was subjected to discipline including the discriminatory discipline outlined within this civil action complaint, Plaintiff was informed that the discipline was required due to Mercedes Benz, USA, LLC standards.

38.     Defendants frequently notified Plaintiff that her conduct did not conform to Mercedes Benz, USA, LLC corporate standards and that Plaintiff's had to be subjected to discipline as a result.

39.     Plaintiff was informed that the reason for Plaintiff's termination was due to Plaintiff not conforming to Mercedes Benz, USA, LLC standards.

40.     Defendant, Mercedes Benz, USA, LLC, is inextricably linked to Defendants, Mercedes Benz of Westchester and Piazza Management Company.

41.     Defendant, Mercedes Benz, USA, LLC, maintains a corporate website which lists Mercedes Benz of West Chester as one of its official certified dealers.

42.      The employees at Mercedes Benz of Westchester or reminded of the fact that they represent the Mercedes Benz, USA, LLC corporate brand on a daily basis.

43. The daily policies, procedures, and protocols that employees of Mercedes Benz of Westchester are required and expected to fulfill are dictated through corporate.

44. The employees who subjected Plaintiff to discrimination and harassment in the workplace were required to attend regular training conducted by Mercedes Benz, USA, LLC.

45. Accordingly, Plaintiff, Blake Modlin was at all times a joint employee of all of the corporate Defendants listed in the caption of this civil action complaint.

## II. **JURISDICTION AND VENUE**

### A. **LAWSUIT NUMBER 1 - 2:23-cv-00279-GEKP**

46. This action involves a Question of Federal Law under Title VII of the Civil Rights Act of 1964. This Court also has supplemental jurisdiction over the Commonwealth Law Causes of Action.

47. Venue is proper in the Eastern District of Pennsylvania as Plaintiff was employed by Defendants and worked in the Philadelphia County in the Commonwealth of Pennsylvania where the discrimination, harassment and hostile work environment complained of occurred.

48. On or around November 7, 2022, Plaintiff Blake Modlin filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants as set forth herein (Charge No. 530-2023-00227).

49. Plaintiff's Charge of Discrimination was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

50. Plaintiff's rights under the Pennsylvania Human Relations Act will be ripe for suit one year after Plaintiff's Charge of Discrimination was dual filed at the PHRC.

51. On or around October 25, 2022, the EEOC issued and sent a Dismissal and Notice of Rights to Plaintiff, thereby exhausting their administrative remedies.

52.    Plaintiff filed a civil action lawsuit on January 23, 2023, in connection with the first Charge of Discrimination she filed at the EEOC, and the Dismissal and Notice of Rights (Right to Sue Letter) issued.

**B. LAWSUIT NUMBER 2**

53.    After Plaintiff received the first Dismissal and Notice of Rights from the EEOC, and the EEOC closed the investigation, Plaintiff, Blake Modlin continued her employment for Defendants including Defendants, Piazza Management Company, Mercedes Benz of West Chester, Mercedes Benz USA, LLC, who were Blake Modlin's joint employers.

54.    After Blake Modlin received the Dismissal and Notice of Rights, the discrimination and harassment in the workplace continued and Ms. Modlin was subjected to additional adverse employment actions by the corporate Defendants which were aided and abetted by the individual Defendants.

55.    Because Plaintiff was subjected to additional adverse employment actions that had not yet occurred when the first Charge of Discrimination was filed at the EEOC, Plaintiff was concerned that she had not exhausted her administrative remedies as to all claims, including significant, Plaintiff's claim of disparate treatment and retaliation in connection with her unlawful termination from employment.

56.    Accordingly, Blake Modlin filed a Second Charge of Discrimination with the EEOC on or around November 10, 2022.

57.    The EEOC opened a new investigation and assigned the second Charge of Discrimination the following Charge Number: 530-2023-01036.

58.    The discrimination and harassment in the workplace continued even after Plaintiff filed the Second Charge of Discrimination with the EEOC.

59.     Accordingly, on February 23, 2023, Blake Modlin filed a Third Statement of Facts, in connection with the second Charge of Discrimination filed with the EEOC.

60.     The EEOC confirmed receipt of both the second Charge of Discrimination and the third Statement of Facts and opened another investigation.

61.     On July 20, 2023, the EEOC issued a second Dismissal and Notice of Rights, which was sent to Plaintiff by regular mail.

62.     According to the second Dismissal and Notice of Rights, Plaintiff Blake Modlin is required to file a second lawsuit within ninety (90) days of receipt of the Right to Sue letter.

63.     This action is hereby commenced within ninety (90) days of the date when Blake Modlin received the Second Right to Sue letter.

64.     This second lawsuit is filed to preserve Plaintiff's rights pursuant to all allegations submitted to the EEOC in the second Charge of Discrimination and the third Statement of Facts.

65.     Plaintiff does not object to this lawsuit being consolidated with the initial lawsuit she filed, which is currently pending in the Eastern District of Pennsylvania with the civil action number 2:23-cv-00279-GEKP.

### III.    <u>MATERIAL FACTS</u>

66.     On or around August 21, 2021, Plaintiff Blake Modlin began their employment with Defendant, Mercedes Benz of West Chester as a receptionist.

67.     At all times relevant, Plaintiff, Blake Modlin worked in Defendants' West Chester, Pennsylvania dealership located at 1260 Wilmington Pike, West Chester, Pennsylvania 19382.

68.     At all times material, Plaintiff worked in Defendants' West Chester, Pennsylvania dealership located at 1260 Wilmington Pike, West Chester, Pennsylvania 19382.

69.     Plaintiff maintained their position as a receptionist for the entire duration of their employment with Defendants.

70.     From the beginning of Plaintiff's employment, they were subjected to severe sexual harassment by multiple employees for Mercedes Benz Westchester including the Defendant's General Sales Manager, Eduardo Millan.

71.     Defendant Millan began forcing Plaintiff into his office on a daily basis, in order to subject them to severe sexual harassment including attempting to coerce them into accompanying him to Las Vegas and sharing a hotel room with him.

72.     Plaintiff was forced away from their work and into Defendant, Eduardo Millan's personal office where Plaintiff sat at Defendant, Eduardo Millan's desk for about 3 hours while Defendant, Eduardo Millan probed Plaintiff with personal questions about their dating life and other very personal issues including where Plaintiff lived, why they moved, who they like, why they liked them, who they were dating, and many other personal questions.

73.     Defendant, Eduardo Millan continued this harassment on a daily basis such that Plaintiff was afraid to come to work.

74.     Plaintiff reported this sexual harassment multiple times and was still forced to continue working with Defendant Eduardo Millan.

75.     Plaintiff, Blake Modlin was subjected to and forced to endure severe and pervasive conduct and comments of a sexual nature from her supervisor, on a daily basis.

76.     Plaintiff, Blake Modlin reported the ongoing sexual harassment and Defendants took no action against the harasser, performed no investigation, and targeted Blake Modlin for reporting the sexual misconduct of Eduardo Millan.

77.     Defendants condoned, permitted, and allowed the sexual harassment to continue which caused Blake Modlin to suffer loss of enjoyment of life, damage to her reputation, and severe emotional distress which continues through the present.

78.   When Defendants refused to take any action in connection with Blake Modlin's protected activity and reports of sexual harassment in the workplace, Ms. Modlin engaged in protected activity again by filing a Charge of Discrimination with the EEOC.

79.   Even after the EEOC received the Charge of Discrimination and began its investigation, Defendants still refused to take any corrective or ameliorative action.

80.   The sexual harassment continued.

81.   The campaign of retaliation got worse.

82.   The work environment became significantly more hostile.

83.   After the EEOC issued a Dismissal and Notice of Rights in connection with the first Charge of Discrimination, the discrimination and harassment in the workplace continued including the sexual harassment and the retaliation.

84.   Plaintiff, Blake Modlin filed a Second Charge of Discrimination against Defendants including but not limited to Mercedes Benz of West Chester due to ongoing, continuous discrimination, harassment, and retaliation to which Plaintiff was subjected and to which Plaintiff continued to be subjected by Defendants.

66.   On October 5, 2022, Plaintiff filed a Charge of Discrimination with the EEOC and received the following Charge Number: 530-2023-00227.

67.   On October 25, 2022, the EEOC issued a Dismissal and Notice of Rights pursuant to Plaintiff's Charge of Discrimination and sexual harassment in the workplace and retaliation.

68.   Since receiving the Right to Sue letter, the illegal conduct including disparate treatment, hostile work environment and retaliation continued.

69.   On Friday, November 4, 2022, Plaintiff was sent home from work without pay.

70.   Defendants stated reason for subjecting Plaintiff to this adverse employment action was nothing but pretext to hide Defendants intentional discrimination and retaliation.

71.     Blake Modlin was singled out and treated differently than the way she was treated prior to the sexual harassment and protected activity.

72.     Blake Modlin was treated differently than other employees who worked with Ms. Modlin and did not engage in protected activity.

73.     Defendants enforced two vastly different policies and rules: those for the employee who worked at the physical location where Blake Modlin worked, and another contrary set aimed toward Blake Modlin and singling Blake Modlin out after the protected activity.

74.     Defendants have initiated a campaign of retaliation subject to Plaintiff's reports of discrimination and harassment and retaliation.

75.     The retaliation was severe and pervasive and has resulted in a ratcheting up of the hostile work environment.

76.     Defendants suspended Plaintiff without pay on November 4, 2022, for wearing attire that Defendants stated was not appropriate for the workplace.

77.     Ms. Modlin was permitted to wear the same attire prior to the protected activity.

78.     After the protected activity, the same, conservative clothing warranted subjecting Ms. Modlin to adverse employment action by suspending Ms. Modlin without pay.

79.     This too was reported by Ms. Modlin as retaliation.

80.     It did not help, and the retaliation continued and got worse.

81.     Defendants position was so clearly discriminatory and retaliatory on its face.

82.     Plaintiff had worn the same attire on previous occasions without any complaints, comments, or criticisms from Defendants.

83.     Moreover, Plaintiff was wearing a turtleneck sweater when she was accused of wearing the not appropriate attire.

84.    Moreover, Defendants did not send home other employees who were wearing clothes that were far more revealing and inappropriate than the clothes worn by Plaintiff that same day.

85.    Moreover, Defendants have used other employees to communicate with Plaintiff's family members including Plaintiff's sister.

86.    Madison Jones is an employee for Defendants who holds the position of Scheduling Manager.

87.    Madison Jones has no legitimate business reason to know about the person, private reports of sexual harassment, sexual assault, retaliation, and discrimination in the workplace.

88.    Still, Defendants made sure to notify Madison Jones about Plaintiff's reports of sexual harassment, sexual assault, retaliation, and discrimination in the workplace.

89.    Then, Madison Jones contacted Plaintiff's sister in order to disparage Plaintiff and embarrass Plaintiff in connection with the sexual harassment, sexual assault, retaliation, and discrimination in the workplace.

90.    Madison Jones essentially stated that Plaintiff is a liar, and that Plaintiff should not be missing work and that there was never any sexual harassment or assault.

91.    Plaintiff reported the illegal conduct of Madison Jones to Defendants, however, Defendants refused to take any meaningful action to investigate or remediate the ongoing harassment and retaliation.

92.    Defendants have taken the position that Defendants will not speak to Plaintiff by phone, even when Plaintiff calls to make reports of discrimination and harassment in the workplace and retaliation.

93.    When Plaintiff did report discrimination and retaliation on Friday, November 4, 2022, Defendants informed Plaintiff that Plaintiff was being insubordinate.

94.     Accordingly, Defendants have begun the process of subjecting Plaintiff to retaliation in the form of verbal discipline when Plaintiff engages in protected activity.

95.     Defendants still have not provided Plaintiff with an employee handbook.

96.     Defendants still have not provided Plaintiff with a process for reporting discrimination and retaliation.

97.     Defendants took no corrective and/or ameliorative action and continued to permit contact between Plaintiff and those involved in the Sexual Assault and Harassment.

98.     Defendants refuse to conduct appropriate investigations and precautions to prevent further discrimination and harassment against Plaintiff.

99.     Defendants have isolated Plaintiff in the workplace by removing colleagues from communicating with the Plaintiff as part of a campaign of retaliation.

100.    Defendants have denied promotion and raises for Plaintiff once the Plaintiff first reported of Sexual Harassment, continuing to the present day.  This includes removing coworkers from the physical location where I work and singling me out for isolation.

101.    Defendants have denied training for Plaintiff.  Plaintiff is denied the opportunity to train and learn including training and learning about new parts of Plaintiff's employment. Similarly situated coworkers are not denied the same training opportunities.

102.    Defendants have denied Plaintiff the ability to communicate with her superiors in in connection with the discrimination and retaliation in the workplace.  This has made it difficult for Plaintiff to be able to discuss remedial measures that Defendants have refused to implement.

103.    Defendants consistently subject Plaintiff to retaliation by cutting working hours and sending Plaintiff home anytime Plaintiff has the opportunity to work overtime.  Prior to reporting the discrimination, harassment and retaliation, Plaintiff consistently worked overtime.

Accordingly, Plaintiff's hours and pay have decreased because of her reports of discrimination and harassment in the workplace.

104.    Defendants have subjected Plaintiff to multiple adverse employment actions by sending Plaintiff home, reducing Plaintiff's hours, and subjecting Plaintiff to discipline under the intentionally false pretext of enforcing Defendants' so-called "policies."   None of these instances involve policies that Defendants enforce against any other employee.  Accordingly Defendants continually engage in disparate treatment and retaliation as part of a campaign of retaliation in an concerted effort to force Plaintiff to be subjected to a hostile work environment that no reasonable person would wish to work within.

105.    Defendants conduct meetings with the Plaintiff without notice and ignore the Charging Parties request to prepare for meetings.  As part of Defendants' campaign of retaliation, Defendants have ambushed Plaintiff by forcing Plaintiff to attend unscheduled meetings in connection with Plaintiff's reports of discrimination, harassment and retaliation.  When Plaintiff asks for additional time to prepare, Defendants subject Plaintiff to instructions that Plaintiff only has one opportunity to report concerns or Defendants will conclude the matter without Plaintiff's statement or input.

106.    Defendants have subjected Plaintiff to contact with employees who were terminated for harassing Plaintiff.

107.    Defendants have notified third parties of Charging Parties accusations as part of Defendants' campaign of retaliation.  This includes Plaintiff's family members who have no connection with Defendants.  This also includes other employees who Plaintiff works with, which contributes to the hostile work environment.

108.    Defendants have denied acknowledging Plaintiff's  numerous and repeated requests, verbally and in writing, for an employee handbook.  To the present date, Defendants have

not even acknowledged Plaintiff's numerous requests for an employee handbook. Defendants continue to deny Plaintiff any access to written policies which might assist Plaintiff in reporting and ameliorating the ongoing severe and pervasive discrimination and harassment in the workplace. At no time from the date the sexual harassment, sexual assaults, and sexual discrimination began to the present did Defendants have an employee handbook available to any of the individuals complicit in or subject to the discrimination and harassment in the workplace.

109.    As part of Defendants' campaign of retaliation, Defendants have subjected Plaintiff to intentionally false and misleading statements about past issues including issues related to Plaintiff's so-called "professional behavior" when Plaintiff has no history of any issues related thereto. By way of example, Defendants have accused Plaintiff of dressing inappropriately when there is no evidence to support this intentionally false and misleading accusation.

110.    Defendants have enacted so-called "policy" that is applied only to Plaintiff in order to single Plaintiff out for discrimination and retaliation to which other similarly situated employees are not subjected.

111.    Defendants have accused Plaintiff of "insubordination" as part of the campaign of retaliation in order to justify disparate treatment and adverse employment actions including but not limited to denial of promotions and raises.

112.    Defendants refuse to communicate via email with Plaintiff about any complaint of policy matters and refuse to talk about any issue when there might be a record of what is discussed.

113.    Defendants have subjected Plaintiff to isolation in order to single Plaintiff out and subject Plaintiff to an increased workload, and denying Plaintiff support from coworkers who are assigned to other stations in order to deny Plaintiff the ability to learn and grow in the company. This is part of Defendants retaliatory strategy so that Plaintiff does not have the ability or opportunity to progress in her career. Defendants take this action against Plaintiff, despite Plaintiff

having the most seniority in her position.  Plaintiff is the most senior Receptionist and has about double the amount of seniority as the next similarly situated coworker.

114.    As a result of the discrimination, and assaults Plaintiff has requested intermittent leave based on the FMLA, as working at Mercedes Benz of Westchester causes her to experience trauma, panic, anxiety and fear.

115.    Plaintiff has repeatedly reported the sexual assaults and aske Defendants whether Defendants plan to utilize the already installed video surveillance system.  Defendants have stated that they have no plans to produce any video evidence and have stated that even if Defendants did have video footage, they would have erased it anyway.  Defendants informed Plaintiff that the footage of the sexual assaults would not have been identified and preserved.

116.    Defendants have denied promotions and raises to Plaintiff once Plaintiff reported sexual harassment and identified Eduardo Millan as an individual who subjected Plaintiff to severe and pervasive discrimination and harassment in the workplace.

117.    Eduardo Mian is in a position to subject Plaintiff to adverse employment actions including the denial of raises, promotions or any other change to the terms and conditions of Plaintiff's employment.

118.    As a result of Defendants' conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

119.    As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

120.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer a loss of income, loss of salary, bonuses, benefits and other compensation which such employment entails.

121.    Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

122.    Plaintiff has further experienced severe emotional and physical distress.

123.    As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

124.    Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

125.    Defendants at all times refused to investigate or take appropriate remedial action in response to Plaintiff's complaints of discrimination, harassment, and hostile work environment.

126.    Defendants discriminatory conduct was severe and pervasive, created a hostile work environment for Plaintiff.

127.    The above are just some examples of some of the discrimination and retaliation to which Defendants subjected Plaintiff.

128.    Upon information and belief, Defendants' discrimination and retaliation will continue after the date of this complaint and claimant hereby makes a claim for all continuing discrimination and retaliation.

129.    Plaintiff claims a practice of discrimination and make all claims under the continuing violations doctrine.

130.    Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

131.    Plaintiff was subjected to adverse employment actions including being denied pay raises and promotions, having her hours reduced and other changes to the terms and conditions of Plaintiff's employment.

132.    Defendants unlawfully terminated Plaintiff's employment on November 28, 2022.

133.    The termination was unlawful and motivated by Defendants illegal decision to subject Plaintiff to discrimination and harassment in the workplace due to Plaintiff's membership in a protected class, sexual orientation, and gender.

134.    \When Plaintiff engaged in protected activity, Defendants began a campaign of retaliation which culminated in the illegal termination.

135.    Plaintiff's termination was an adverse employment action that was the result of a campaign of ongoing discrimination and harassment and retaliation.

136.    Plaintiff engaged in ongoing protected activity and Defendants ratcheted up the hostile work environment subjected Plaintiff to daily ridicule, abuse, harassment, and sexual harassment.

137.    The individually identified Defendants led the campaign of discrimination and retaliation.

138.    Defendants and the individually identified Defendants never allowed Plaintiff any respite from the ongoing, severe, and pervasive sexual harassment and retaliation that continued even after Plaintiff reported the sexual misconduct.

139.    Defendants continued to employ an individual who was investigated for sexual assaulting Plaintiff in the workplace by the police.

140.    When Plaintiff reported the sexual assault and sexual harassment, Defendants initiated a campaign of retaliation that resulted in Plaintiff being subjected to multiple adverse employment actions, discipline issued under false pretext, and termination issued under false pretext.

141.    Plaintiff was singled out and treated differently than similarly situated coworkers who were not members of Plaintiff's protected class and/or did not engage in protected activity.

142.    Defendants continued to protect and employ individuals who subjected Plaintiff to severe and pervasive sexual harassment in the workplace throughout Plaintiff's employment.

143.    Defendants continued to employ an individual who sexual assaulted Plaintiff.

144.    As a result of Defendants' conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

145.    As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

146.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer a loss of income, loss of salary, bonuses, benefits and other compensation which such employment entails.

147.    Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other nonpecuniary losses.

148.    Plaintiff has further experienced severe emotional and physical distress. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

149.    Defendants have exhibited a pattern and practice of not only discrimination but also retaliation. Defendants at all times refused to investigate or take appropriate remedial action in response to Plaintiff's complaints of discrimination, harassment, and hostile work environment.

150.    Defendants discriminatory conduct was severe and pervasive, created a hostile work environment for Plaintiff.

151.    The above are just some examples of some of the discrimination and retaliation to which Defendants subjected Plaintiff.

152.    Plaintiff claims a pattern and practice of discrimination and makes all claims under the continuing violations doctrine.

153.     Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

154.     Plaintiff was subjected to adverse employment actions including being denied pay raises and promotions, having her hours reduced and other changes to the terms and conditions of Plaintiff's employment.

**COUNT I**
**Disparate Treatment in Violation of**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.**

155.     Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

156.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 provides in relevant part:

a.  "It shall be unlawful employment practice for an employer (1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) limit, segregate, or classify his employees or applicants for employment in any wat which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2

157.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(d) further provides that "it shall be an unlawful employment practice for an employer… controlling… training or retraining, including on-the-job training programs to discriminate against any individual because of [their] race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide training."

158.    Defendants engaged in unlawful employment practices prohibited by Title VII by intentionally discriminating against Plaintiff with respect to their compensation, terms, conditions, training, and privileges of employment because of their sex and gender identification.

159.    Defendants subjected Plaintiff to adverse tangible employment actions – defined as significant changes in Plaintiff's employment status, discipline, denial of training, failure to promote, and decisions causing significant changes in their employment benefits.

160.    At all times material, Plaintiff identified as and used the pronouns, "they/them."

161.    At all times material, Defendants had knowledge of Plaintiff's sex and gender identification.

162.    At all times material, Defendant Millan held supervisory authority over Plaintiff with respect to their employment.

163.    At all times material, Defendants authorized Defendant Millan and others to take tangible employment action against Plaintiff as an employee of the Defendants.

164.    As alleged herein, Defendant Millan, in their capacity as Plaintiff's supervisor, intentionally discriminated against Plaintiff with regard to the terms and conditions of their employment on the basis Plaintiff's sex and gender identification.

165.    At all times material, Defendants' discriminatory conduct was not welcomed by Plaintiff.

166.    At all times material, Plaintiff's sex and gender identification were the motivating and/or determinative factors in Defendants' decision to subject Plaintiff to adverse employment action.

167.    Defendants cannot show any legitimate, nondiscriminatory reasons for its employment practices and any reasons proffered by Defendants for its actions against Plaintiff are pretextual and can be readily disbelieved.

168.    As alleged herein, Defendants' discriminatory and harassing actions towards Plaintiff because of sex and gender identification are unlawful employment practices in violation of the Civil Rights Act of 1964.

169.    Defendants' unlawful employment actions towards Plaintiff were intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

170.    Defendants acted upon a continuing course of conduct.

171.    Defendants Mercedes Benz of West Chester and Mercedes Benz USA, LLC are vicariously liable for the unlawful employment actions by Defendants against Plaintiff in the course and scope of their employment.

172.    As a result of Defendants' unlawful discrimination against Plaintiff in violation of Title VII, Plaintiff has suffered and continues to suffer emotional and financial harm.

## COUNT II
### Hostile Work Environment in Violation of
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*

173.    Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

174.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 provides in relevant part:

   a.    "It shall be unlawful employment practice for an employer (1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) limit, segregate, or classify his employees or applicants for employment in any wat which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his

status as an employee, because of such individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000e-2

172.    Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the Plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the Plaintiff's employment. *Harris v. Forklift Systems*, 510 U.S. 17, 21 (1993).

173.    Defendants, in their capacity as Plaintiff's supervisor, intentionally discriminated against Plaintiff in the terms and conditions of their employment on the basis of Plaintiff's race and/or color.

174.    Defendants delegated to Defendant Millan and Defendant Strickland the authority to control Plaintiff's work environment, and Defendants abused that authority to create a hostile work environment.

175.    At all times material, Defendants' intentional, sex-based discrimination was not welcomed by Plaintiff.

176.    At all times material, the intentional, sex-based discrimination by Defendants was so severe and/or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

177.    At all times material, Plaintiff believed their work environment to be hostile or abusive as a result of Defendants' discriminatory conduct.

178.    The hostile work environment alleged herein unreasonably interfered with Plaintiff's work performance.

179.    The hostile work environment alleged herein was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

180.    Defendants failed to provide viable avenues for complaints of discrimination and harassment.

181.    Defendants retaliated against Plaintiff for their complaints of discrimination and harassment.

182.    Defendants acted upon a continuing course of conduct.

183.    Defendants' unlawful actions towards Plaintiff were intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

184.    As a result of the violations of Title VII complained of herein, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT III**
**Unlawful Retaliation in Violation of**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.***

185.    Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

186.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

187.    As alleged herein, Plaintiff engaged in protected activity under Title VII including, but not limited to raising formal and informal complaints opposing Defendants' discriminatory employment practices.

188.    At all times material, Plaintiff acted under a good faith belief that their right to be free from unlawful discrimination in the workplace was violated.

189.    Plaintiff was subjected to materially adverse actions at the time or after the protected conduct took place.

190.    Plaintiff's protected activity was the motivating and/or determinative factor in Defendants' decision to take materially adverse action against Plaintiff.

191.    Defendants acted upon a continuing course of conduct.

192.    Defendants' unlawful actions towards Plaintiff were intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

193.    Defendants' action to take materially adverse action against Plaintiff in retaliation for Plaintiff's prior protected activity is an unlawful employment practice in violation of Title VII of the Civil Rights Act of 1964.

194.    As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## **JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all actual damages for physical injuries caused to Plaintiff, compensatory damages, emotional distress and punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

**DEREK SMITH LAW GROUP, PLLC**

By: _____/s/ Seth D. Carson_____
      Seth D. Carson
      1835 Market Street
      Suite 2950
      Philadelphia, Pennsylvania 19103
      (215) 391-4790
      *Attorney for Plaintiff, Blake Modlin*

DATED: October 18, 2023